THOMAS FICKLIN, Respondent, v. WABASH RAIL-ROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 8, and February 5, 1906.

1. COMMON CARRIERS: Pleading: Negligence: Recovery. Where a shipper bottoms his action solely upon negligence of the carrier and by his instructions submits that question to the jury, the burden is upon him to show the negligence in furnishing the cars or transportation and that such negligence was the proximate cause of the damage suffered.

2. ————: Negligence: Furnishing Cars: Instructions: Evidence. A shipper bottomed his action on negligence and submitted in an instruction the issue of negligence in failing to provide cars within a reasonable time. *Held*, that an instruction given for the carrier that the shipper could not recover if the carrier failed to furnish cars at any specified time was not in conflict with the shipper's instruction and was properly given, since it restricted the jury in their finding; and the evidence is sufficient to support the finding of the jury.

Ficklin v. Railroad.

3. ———: ———: **Delay in Shipment: Evidence.** The evidence relating to an issue of negligence in the transportation of a shipment of cattle is reviewed and held sufficient to send the question to the jury, since the whole conduct of the carrier from the order to drive the cattle in until the delivery at the unloading chutes was for the triers of fact.

4. ———: **Contract: Negligence.** A carrier is not permitted to contract with the shipper to excuse himself from liability for damages resulting from his own negligence.

5. ———: ———: **Stipulations: Construction.** A provision in a shipping contract estimating the weight of certain cattle at a given amount is only an estimate and is not binding as to the real weight of the cattle and will not defeat the recovery of the shipper for actual shrinkage resulting from negligence; and so a stipulation as to the value per head of the cattle is intended to limit the amount of recoverable damages and so long as the damages recovered are within that amount the carrier is in no position to complain.

6. ———: **Pleading: Aider by Answer.** Though a petition fails directly to say that the carrier received the cattle for transportation for hire it is held that such fact is fairly inferable from the other allegations; and where the answer sets up the contract showing it was for hire the defect if any is cured by the answer.

Appeal from Gentry Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*Geo. S. Grover* for appellant.

(1) The demurrer to the evidence interposed by defendant at the close of plaintiff's evidence should have been sustained. R. S. 1899, sec. 798; Clark v. Railroad, 39 Mo. App. 191; Sloop v. Railroad, 93 Mo. App. 609. (2) At the close of the entire case the court below should have directed a verdict in favor of the defendant. Authorities cited, supra; Perry v. Railroad, 89 Mo. App. 545; Wyrick v. Railroad, 74 Mo. App. 4-6; Kellerman v. Railroad, 136 Mo. 191; Hart v. Railroad, 112 U. S. 331. (3) The instructions given by the court at the

request of plaintiff were erroneous. Chambers v. Railroad, 86 S. W. 502. (4) The instructions asked by defendant and refused should have been given. Authorities cited, supra.

*Peery, Lyons & Wood* for respondent.

(1) That this is a case of actionable negligence seems too clear for extended argument. Guinn v. Railroad, 20 Mo. App. 543; Pruitt v. Railroad, 62 Mo. 527; Baker v. Railroad, 91 Mo. 152; Gelvin v. Railroad, 21 Mo. App. 273; Miller v. Railroad, 62 Mo. App. 252; Wilson v. Railroad, 66 Mo. App. 388-394; Gann v. Railroad, 72 Mo. App. 35. (2) It has been likewise frequently held in other jurisdictions that the carrier is equally liable whether the delay arises from a failure to furnish cars promptly, or from a delay in transportation while the stock are enroute. Ayres v. Railroad, 75 Wis. 215; McAbster v. Railroad, 108 N. C. 344; Hamilton v. Railroad, 96 N. C. 398; Railroad v. Lehman, 56 Md. 209; Railroad v. Campbell, 91 Tex. 351; s. c., 43 L. R. A. 225, and notes. (3) But as applied to the issues made by the pleadings and the evidence in this case, the instruction was a mere abstraction, and the jury were fully warranted under the authorities heretofore cited, in following the clear and correct directions as to the law contained in plaintiff's instructions numbered 1 and 2. (4) But not only was there negligent and actionable delay in beginning the transportation of these cattle, but there was also an unreasonable and negligent delay in transporting and delivering them to the consignee at the point of destination. This evidence entitled the plaintiff to go to the jury on the question of negligence in transportation of the cattle. Leonard v. Railroad, 54 Mo. App. 294; Botts v. Railroad, 106 Mo. App. 401 l. c.; Sloop v. Railroad, 84 S. W. 113, 93 Mo. App. 605; Anderson v. Railroad, 93 Mo. App. 677; Douglass v. Railroad, 53 Mo. App.

473; Blanchard v. Railroad, 60 Mo. App. 267; Hendrix v. Railroad, 107 Mo. App. 137; Smith v. Railroad, 87 S. W. 9, — Mo. App. —. (5). But the defendant contends that the plaintiff is not entitled to recover because the cattle were valued in the contract of shipment at $50 per head. This clause of the contract has no reference whatever to the character of damages sued for in this case, arising as they do from a decline in the market price of the cattle caused by delay in shipment. injury to" the animals. Such has ever been the construction put by this court on such a clause in this kind of contract. Leonard v. Railroad, 54 Mo. App. 293; Klass Com. Co. v. Railroad, 80 Mo. App. 164; Loeb v. Railroad, 85 S. W. 118, — Mo. App. — ; Harvey v. Railroad, 74 Mo. 538; Rogan v. Railroad, 51 Mo. App. 665; Kellerman v. Railroad, 136 Mo. 177, and cases cited; Starnes v. Railroad, 91 Tenn. 516; Nelson v. Railroad, 28 Mont. 297; Hart v. Railroad, 112 U. S. 331; Rice v. Railroad, 106 Mo. App. 371.

JOHNSON, J.—Action to recover damages from a common carrier on account of delay in the carriage of live stock to market. Plaintiff had judgment in the sum of three hundred dollars and defendant appealed. Material facts appearing from the evidence introduced by plaintiff are as follows:

On December 12, 1903, plaintiff, a live-stock feeder and shipper, applied through his son to defendant's agent at Stanberry, Missouri, for five cars, in which to ship eighty-four head of fat cattle to market, stating that the cars were needed for loading on the following Monday morning, the 14th. The son was not certain of the destination of the shipment and because of that fact, the The clause by its plain terms applies only to "loss of or agent did not then enter the order. The following day, the agent was notified that the market at St. Joseph was the one selected and thereupon received the order, and

agreed to have the cars ready for loading at the time required. The following morning, plaintiff telephoned from his farm, four miles distant from Stanberry, to the agent inquiring about the cars and was informed that they were ready. Plaintiff then sought information relative to the bedding that should be brought for the cattle. The agent, after consulting with others in the office, informed plaintiff that the cars had not yet arrived, but would be there in twenty minutes, and plaintiff without objection from the agent expressed his purpose to drive the cattle in at once for shipment. He arrived with them at three or four o'clock in the afternoon and, with the consent of the agent, put them in defendant's shipping pens. Defendant had cars of its own available for the shipment, but the agent informed plaintiff that the rules required the use of no other cars than those of the Chicago, Great Western railroad in shipments of stock to St. Joseph, and that the cars ordered had not arrived. Had they been on hand, the cattle could have been loaded in time to leave on a train that departed from Stanberry at about six o'clock that evening. The cars were not provided until after the leaving of that train. The cattle, with the exception of one steer that escaped, were loaded and started on their journey at about ten o'clock that night. Defendant hauled them a distance of nine miles to its junction with the Chicago, Great Western road at Conception and there delivered the cars to that carrier. They did not reach St. Joseph until eight-thirty the next morning, and then for some reason, not shown, were not switched to the unloading chutes until about eleven o'clock. It thus appears that about twenty hours elapsed from the time the cattle were received at defendant's pens in Stanberry to that of their delivery and that twelve or thirteen hours were consumed in the transportation. The time ordinarily required is about six hours. It was plaintiff's purpose, known to defendant, to have his cattle on sale at the stock yards during the best of Tuesday's market.

When the cattle arrived, the market for that day was practically over. The market hours are from eight-thirty a. m. to three p. m., but on this particular day the buyers had filled their orders before plaintiff's cattle could be offered for sale and, as a result, the highest offer plaintiff received was fifteen cents per hundred pounds less than the ruling price during the hours the buyers were supplying their demands. The cattle were not sold until the following morning, when, on account of a general decline in the market, they were sold for twenty-five cents per hundred pounds less than could have been obtained for them, had they arrived in time for the market on Tuesday. It further appeared that the cattle suffered a loss in weight of fifteen or twenty pounds per steer on account of their long wait in the pens at Stanberry and the unusual delay in their transportation. Plaintiff claims that defendant failed to observe ordinary care and diligence in supplying him with cars as well as in the carriage of the cattle.

Defendant introduced evidence tending to relieve it from the imputation of negligence, but, as this issue of fact was submitted to the jury, it is unnecessary to detail the facts bearing upon it adduced by defendant, and our chief concern is with the questions raised under defendant's request for a peremptory instruction, which the court refused to give.

Plaintiff in his petition founds his cause of action solely upon the negligence of defendant, and the court in the instructions given at his request submitted no other issue to the jury. Doubtless, plaintiff thus restricted the scope of his common-law cause of action in anticipation of the defenses that would be interposed under the written contract of affreightment, signed by him before the transportation began. Whatever his motive may have been, plaintiff must recover, if at all, upon the cause of action pleaded, that is to say, the burden is upon him to show that defendant was negligent either in the furnishing of cars or in the transportation, and that such neg-

ligence was the proximate cause of the damage suffered. Defendant says that plaintiff failed to sustain his burden. First, with respect to the furnishing of cars, it is claimed this issue was withdrawn from the consideration of the jury in an instruction given at the request of defendant and that, as plaintiff has not appealed, he cannot now uphold the judgment on that ground; and second, that no facts appear in evidence supporting the charge of negligence in the transportation, for the reason that the cause of the unusual delay is not disclosed and, therefore, the inference that it was negligent was drawn from conjecture and not from proof. The instruction referred to is as follows:

"The jury are instructed that, under the pleadings and the evidence in this case, the plaintiff is not entitled to recover in this action for the failure of defendant, if it did so fail, to furnish cars for the shipment of his live stock at any specified time."

In the first instruction given for plaintiff, the issue of defendant's negligence in failing to provide cars within a reasonable time was submitted and, if we should adopt the interpretation of the instruction, above copied, urged by defendant, we necessarily would have to find that it is in conflict with that given for plaintiff. We are of the opinion no conflict exists between them. The evident purpose of the instruction under consideration was to confine the consideration of the jury to the issue of negligence in not observing due care to provide the cars within a reasonable time and to preclude the possibility of a finding based upon the hypothesis of a breach of contract to furnish them at a specified time. No right to recover upon a contract of such character is asserted in the petition, but, as plaintiff introduced evidence showing a promise by defendant's agent to provide the cars for use at a specified time, the jury, if unrestrained, would have been free to base a verdict upon a breach of this promise. The only effect of this instruction was to restrict the consideration of the jury

to the cause of action pleaded. It is in harmony with the instructions given for plaintiff and does not remove from the case the initial negligence upon which the cause of action asserted is in part predicated. The verdict of the jury thus instructed is a finding that defendant did not exercise reasonable diligence in the furnishing of cars, and we are constrained to say this finding is supported by substantial evidence. We will concede that defendant was not required to provide cars within any given time, nor for any particular train, but it was under the duty, knowing that the cattle were fat and marketable and that loss would follow delay, to use reasonable diligence to avoid detaining them after they had been started to market. Without more, the fact alone that defendant's agent assured plaintiff that the cars were at hand, knowing that plaintiff would act upon the assurance, coupled with the facts that no cars were available and that the forwarding of the shipment would be delayed thereby, is evidence of negligence sufficient to take the issue to the jury.

Relative to the second point made by defendant that no negligence is shown in the transportation, it appears that there was a delay of some five or six hours at Conception, the junction point, and one of two and one-half hours at St. Joseph in switching the cars to the receiving chutes. Defendant attempts to account for the first of these by showing that the cars were forwarded from Conception on the first train of the connecting carrier. No effort is made to explain the delay in switching at St. Joseph. In this state of the evidence, in view of the fact adduced by plaintiff and not denied by the defendant's witnesses, that the time ordinarily consumed in the entire transportation of stock from Stanberry to the stock yards at St. Joseph is within six hours, a fair inference of negligence arises. True, the burden is upon plaintiff to show negligence, but this fact may be inferred from other facts and circumstances in the absence of direct proof. The delay in the transportation may

have resulted in part from that in the furnishing of the cars. The two so blend that it seems impossible to discern where one ends and the other begins. But whether the delay in the transportation was occasioned wholly by that in the starting of the shipment, or in part from causes arising en route, the whole conduct of defendant from the time it gave word for the cattle to be driven in until it delivered them at the unloading chutes, was a subject for the triers of fact to consider and classify.

Defendant pleaded in its answer and introduced in evidence the shipping contract signed by plaintiff. Much reliance is placed upon the restrictions upon defendant's liability as a carrier therein embodied to relieve it from any liability to plaintiff. A carrier is not permitted to contract with the shipper to excuse himself from liability for damages resulting from his negligence, and therefore the contract can have no bearing upon the questions we have discussed. Effect is claimed for it in respects not so embraced; among them the following:

In the contract, the weight of the eighty-three head of cattle was estimated 110,400 pounds and their value stated at fifty dollars per head. When weighed and delivered to the purchaser, the cattle weighed 113,720 pounds and brought in gross a few cents over fifty dollars per head. Among others, the contract contains this stipulation: "And in consideration of the reduced rate aforesaid, it is further agreed that neither said party of the first part nor any connecting line shall be liable for the loss or injury to any of said animals in any amount in excess of the valuation thereof, as stated in the application of the party of the second part, which is hereto attached and made a part of this contract." It is urged first, that plaintiff is bound by his statement of weight and, as the cattle actually exceeded that weight by more than three thousand pounds, plaintiff cannot recover for shrinkage resulting from the delay; and, second, that he is likewise bound by his statement of value, and, as the cattle brought more per head than the amount at which

they were valued, plaintiff cannot recover on account of a decline in the market.

It is not necessary to a proper determination of these questions to pass upon the validity of these restrictions in the contract. In our interpretation of them, we assume for argument, without so holding, that they are binding upon the plaintiff, and yet find ourselves unable to sanction the conclusions of defendant. The contract shows in express terms that the weight was only estimated, that is, it was taken by both parties as an approximation for the primary purposes of computing the amount of the freight charges. Being nothing more than a guess, it should not be treated as a conclusive admission against the interest of plaintiff. Equally untenable is defendant's position with respect to the value placed upon the cattle. The clear intent and purpose of that stipulation is to limit the amount of the recoverable damages to the stipulated value. This is founded upon the idea, upon the correctness of which we express no opinion, that as the freight rate is in part based upon the value of the property offered for shipment, the carrier should be accorded the privilege of so restricting its liability. The fact that the property after injury is worth the value given has no effect upon the question of defendant's liability. So long as the damages claimed are within the limits of the agreement, the carrier is in no position to say that it is being held to a greater pecuniary responsibility than that for which plaintiff contracted and paid.

Further, it is contended that the petition is fatally defective in failing to allege that defendant received the cattle for transportatiion as a common carrier for hire. There is no direct averment of this fact, but from those alleged it is fairly inferable. Defendant did not attack the petition, but answered to the merits and pleaded the entire contract of affreightment, from which it appears beyond question that its relation to plaintiff was that

of a common carrier for hire. Under the doctrine of express aider, this cured the defect, if it existed at all.

The demurrer to the evidence was properly overruled and, upon a careful examination of the whole record, we find that the case was fairly tried and submitted. Other points made are so clearly without merit that we do not feel called upon to give them special notice. The judgment is affirmed. All concur.

