SAM McFALL, Respondent, v. THE WABASH RAIL-
ROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 6, 1906, and April 2, 1906.

1. **COMMON CARRIERS: Duties: Negligence: Delay.** A common
carrier is to place himself in a condition to handle with rea-
sonable expedition the business it has reason to expect and
then to maintain and operate its line and equipment so as to
enable it to properly care for its ordinary business; and the
failure to do so is a breach of duty and therefore negligence
and the only excuse for unusual delay in shipments are those
that cannot be reasonably anticipated, controlled or avoided
by the reasonable exercise of care, such as the act of God, etc.

2. ———: ———: ———: ———: **Wreck: Contract.** The occur-
rence of a wreck is prima facie the result of the carrier's neg-
ligence, since its duty is to keep the track clear. Such prima
facie case, however, may be overcome by proof of unavoidable
causes; and where the unusual delay in transportation occurs,
caused by a wreck for instance, negligence is admitted, and no
contract could relieve the carrier from liability for resulting
damages, unless the wreck is occasioned by an unavoidable
cause.

3. ———: **Delay: Suffocated Hogs: Evidence: Contract.** The
evidence shows that the hogs received would have safely made
the trip but for unusual delay. *Held*, the fact is made to ap-
pear that the death of the hogs was the result of the carrier's
negligence, and the clause of the contract will not relieve the
carrier from damages resulting in suffocation caused by the
carrier's negligence, but only for suffocation attributable to
some other cause.

4. ———: **Insurer: Missing Hogs: Natural Vice.** A common carrier is an insurer and the shipper only has to make out a prima facie case by showing delivery and the failure to deliver at destination, and this applies to live stock except where the loss is caused by the natural vice of the animal and the shipper must bring the loss within the provision of the contract; and though the contract protects the shipper from animals escaping through openings in the cars, yet, if such escape is caused by its own negligence, it is still liable.

5. ———: **Notice of Loss: Evidence: Contract: Presumption.** The correspondence between the shipper and the carrier is reviewed and held to contain a manifest admission of the fact of such notice within the contract time.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

AFFIRMED.

*Geo. S. Grover, Frank P. Sebree* and *John D. Wendorff* for appellant.

(1) Defendant's demurrer to the evidence should have been sustained for the reasons: First—Under the Contract of shipment, entered into between plaintiff and defendant, plaintiff was not entitled to recover; Second —No negligence on the part of the defendant was shown; and, Third—Plaintiff did not suffer any damages on account of shrinkage or decline of market price of the hogs. (2) Defendant can limit its common law liability. Smith v. Railway, 87 S. W. 10; Wyrick v. Railway, 74 Mo. App. 406; Duvenick v. Railway, 57 Mo. App. 550; Kellerman v. Railway, 136 Mo. 173; Harvey v. Railroad, 74 Mo. 538; Hart v. Railroad, 112 U. S. 331; Crow v. Railway, 57 Mo. App. 135. (3) The contract of shipment in this case was valid. Cau v. Railroad, 194 U. S. 427; Smith v. Railway, 87 S. W. 9; Wyrick v. Railway, 74 Mo. App. 413; Duvenick v. Railway, 57 Mo. App. 550; Browning v. Railway, 90 Mo. App. 330. (4) Notice not given. Smith v. Railway, 87 S. W. 10; Hamilton v. Railroad, 80 Mo. App.

602; Brown v. Railway, 18 Mo. App. 577. (5) The contract precludes a recovery. Smith v. Railway, 87 S. W. 10; Rogan v. Railroad, 51 Mo. App. 675; Wyrick v. Railway, 74 Mo. App. 412; Railroad v. Cleary, 74 Mo. 637; Sturgeon v. Railroad, 65 Mo. 573; Harvey v. Railroad, 74 Mo. 546. (6) The reduced freight rate and liquidated damages. Kellerman v. Railway, 136 Mo. 177; Hart v. Railroad, 112 U. S. 331; Duvenick v. Railway, 57 Mo. App. 550; Harvey v. Railroad, 74 Mo. 538; Rogan v. Railroad, 51 Mo. App. 674; (7) Defendant not guilty of negligence. Vaughan v. Railroad, 78 Mo. App. 644. (8) There was no decline in the market. (9) Delay in transportation did not cause any shrinkage of the hogs.

*H. H. McCluer* and *Omar E. Robinson* for respondent.

(1) Here there was not only no reduced rate, but could have been none, as it was a contract for interstate shipments. Ward v. Railway, 158 Mo. 226. (2) Notice appears to have been given. The letters from defendant read in evidence show that the company did receive notice of this claim; that it was duly acted on; that no objections were made to it; that the claim was duly considered and finally rejected on account of alleged non-liability on other grounds than a defective notice. Ward v. Railroad, supra. (3) It was not only the duty of the appellant to transport the hogs in question, but to transport and deliver same to consignee, and all the evidence shows that two of the hogs were never delivered to the consignee, but were wholly lost. (4) There was shrinkage and death of hogs. (5) All the evidence shows conclusively that there was a decline in the market and it would not appear necessary to further take up this question as it was clearly one for the jury and the jury found for the respondent. (6) This delay was caused by the negligence of defendant company. Negli-

gence may be presumed from the length of the delay. Defendant cannot claim a wreck on its own road, because a wreck itself was the result of defendant's negligence.    Tucker v. Railway, 50 Mo. 385.

JOHNSON, J.—Action to recover damages from a common carrier on account of negligent delay in the transportation of live stock to market.    Plaintiff recovered judgment and defendant appealed.

From the evidence introduced by plaintiff, it appears that defendant, as a common carrier for hire, received from plaintiff at Pattonsburg, Missouri, ninety-two head of fat hogs, which it undertook to deliver at the stock yards in Kansas City, Kansas.    The shipment left Pattonsburg at about eight o'clock one Sunday evening and, if carried with ordinary dispatch, should have been delivered in about twelve hours, in time for the early market the next morning.    It was not delivered until about five o'clock Monday afternoon, too late for that day's market.    When delivered, four of the hogs were dead, two missing, and the others reduced in weight on account of being so long in transit without food or water.    The live hogs were sold the following day, but, because of a decline in the market, brought less than would have been realized from them had they been delivered in a reasonable time.

Defendant attempted to free itself from the charge of failing to exercise that degree of care required by law of a common carrier in the transportation of live stock, by showing that the delay was caused by the line being blocked from the derailment of another of its trains than that carrying plaintiff's property and that this unexpected happening occurred after the transportation began.

Defendant, in its answer, pleaded exemption from common law liability under the provisions of the contract of affreightment, under which the hogs were shipped, which for the expressed consideration of a reduced rate

limited defendant's liability to damages resulting from negligence of the carrier alone. We do not find it necessary to consider the validity of those limitations in this case. That subject, in various phases, has received our attention at this term in the cases of Ficklin v. Railroad, 117 Mo. App. 211, and our views thereon may be ascertained from the opinions filed in those cases. In the view we entertain of the various questions now before us, we may concede for argument (but without so holding) that the contract does excuse the defendant from all liability except that resulting from its own negligent acts of omission or commission.

The duty of a common carrier is first to place itself in condition to handle with reasonable expedition the business that it has reason to expect will come to it and then to so maintain and operate its line and equipment as to enable it to properly care for its ordinary business. The failure to do either of these things is negligence, for it is a breach of duty, and negligence and breach of duty are but interchangeable terms. The only causes that will excuse the unusual delay of the carrier in forwarding a shipment are those that cannot reasonably be anticipated, controlled or avoided by the reasonable exercise of care, such as the Act of God, that of the public enemy; unavoidable accident; a sudden and extraordinary influx of business overtaxing facilities provided for normal conditions; a general strike that paralyzes the operation of the road; the negligence of the shipper himself. All these are things that human foresight and prudence cannot be expected to obviate and therefore the carrier is excused if prevented from performing its duty by any of them.

Aside from obstacles presented by causes such as these, the carrier is liable in all cases for damages resulting from unusual delay. Avoidable accidents resulting from a defective roadway or from insufficient or defective equipment are included within the field of cul-

117 App.—31

pability.   The performance of the duty of forwarding a
shipment within a reasonable time involves that of keep-
ing the track clear of obstructions that impede progress,
and, if the way becomes blocked by the negligence of
the carrier and the shipment thereby unusually delayed,
such delay is not reasonable, nor excusable, and the car-
rier becomes liable for the damages resulting therefrom
to the shipper.

It is not shown that the derailment of the train,
that produced the blockade, was an accident that could
not have been avoided by the exercise of reasonable care.
The occurrence of a wreck is *prima facie* the result of
the carrier's negligence.   This presumption may be over-
come by proof that its cause was unavoidable by the
exercise of reasonable care, but the burden of proof is
shifted to the carrier when the fact is made to appear
that the wreck was the producing cause of the delay.

The case, therefore, is in this posture.   In admitting
that an unusual delay occurred in the transportation,
caused by a wreck of one of its train upon its line, with-
out showing that the casualty was unavoidable, as we
have defined the term, defendant has admitted the fact
of its negligence and no contract it could make would
serve to relieve it from liability for the damage resulting
therefrom to the shipper's property.

Plaintiff, under the instructions given, was permit-
ted to recover damages for the four dead hogs, the two
lost, and for the injury by loss of weight and deprecia-
tion in market value to those remaining.   It is contend-
ed that the contract expressly releases defendant from
liability for damages resulting, either from the suffoca-
tion of animals in transit or from their escape through
the openings of the car.   It is shown that the car was
not overcrowded; that the animals were in good condi-
tion when they left Pattonsburg; and that the openings
of the car were securely closed.   With respect to the four
dead, it is charged in the petition that by reason of the
unusual delay they "were overcome with exhaustion and

fatigue, and with lack of water and nourishment, and that they suffocated and died." The evidence does not show whether the hogs died from suffocation or exhaustion produced by the hardship of their long confinement in the car, but there is substantial evidence to the effect that, in the condition they were when loaded, they would have safely made the trip but for the unusual and negligent delay. Consequently, both by averment and proof, the fact is clearly made to appear that the death of the hogs was the direct result of defendant's negligence. But, assuming that the hogs were suffocated, there is abundant evidence going to show that the result followed from their prolonged confinement rather than from overloading the car or from the natural vice of the animals themselves. This clause of the contract will not be construed to release the carrier from damages resulting from the suffocation of the animals directely caused by the carrier's negligence, but only from that attributable to other causes. There is no evidence in the case, from which the inference may reasonably be drawn that the death of the four resulted from anything else than the excessive delay.

As to the two missing. Defendant receipted for ninety-two head and delivered ninety. Several witnesses introduced by plaintiff testify that ninety-two were shipped. It does not appear how the two were lost. Under the common law, the carrier's obligation is that of an insurer and all that is required of the shipper to make out his prima facie case is to show delivery to the carrier and its failure to deliver at the destination. This rule in its application to the carriage of live stock has one exception. The carrier is not responsible for loss or injury caused by the natural vice or propensities of the animals. [Hance v. Express Co., 48 Mo. App. 179; Cash v. Railroad, 81 Mo. App. 109.] Where, however, the cause of loss is unconnected with such characteristic, the ordinary rela-

tion between shipper and carrier is not affected by the fact that the property transported is live stock. [Hance v. Railroad, supra.] There is no room in the case before us for the entertainment of a reasonable inference that the loss of the two is attributable to the exceptional cause. An exemption provided by the contract applies to loss sustained "in consequence of the escape of any of said stock through the doors and openings in said cars." After the fact of the loss appears, the burden is upon the carrier to show that it falls within the exception. This defendant failed to do and therefore is in no position to enforce this provision. Again, we say that we will not sanction a construction of this stipulation that releases the carrier from liability for damages resulting from its own negligence. For example: if during the transportation, the carrier's servant opened a door of the car for any purpose and negligently failed to securely close it, and thereby permitted animals to escape, the carrier would be liable under the rule forbidding it to stipulate with the shipper against its own negligence.

Further, it is contended that plaintiff cannot recover because he failed to give defendant written notice of the damage claimed in the time and manner required by the contract, which provides for the giving of such notice within ten days from the date of delivery by the carrier. Plaintiff attempted to prove the giving of the notice, but because of defects in his preliminary proof the evidence was excluded. He then introduced some correspondence exchanged between one of his lawyers and defendant some two months after the delivery of the hogs. One of the letters written by defendant is as follows:

"In replying to yours next attached will say all papers in this claim are at present with our legal department asking for a ruling as to settlement of this case, and as soon as returned will promptly advise Crider

Bros. Com. Co. (plaintiff's agent) who presented claim to us, what we can do in settlement."

And later, defendant wrote this letter:

"Yours of January 17th relative to claim of Messrs. Crider Bros. Commission Co., Kansas City, for alleged damage to hogs shipped from Pattonsburg to Kansas City, Missouri, I would state that our investigation of this matter was completed some time since on January 16th, and Crider Bros. were advised through our general live stock agent that we could not make settlement of this claim, and they were asked to so advise Mr. McFall, the shipper. Investigation shows that there was no avoidable delay, and further that the stock brought more on the market than the valuation as specified in the contract. I presume that Crider Bros. informed the shipper as requested and that therefore this matter is satisfactorily disposed of."

It clearly appears from these letters that a claim was presented, that it received consideration upon the merits, and that no point had been or was being made as to the sufficiency of the notice. It is not required of us to consider questions of waiver by estoppel or intention, as the letters manifestly contain an admission of the fact that due notice had been given within the time required.

We have carefully noted the other points made. Some of them are covered in the cases of Ficklin v. Railroad and, for that reason, require no further discussion here. The others appear to be without merit. The judgment is affirmed. All concur.