T. C. CREEL, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, May 3, 1909.**

1. **COMMON CARRIERS: Contract: Reduced Rates.** A contract of shipment is examined and held not to have been on a re-duced rate, and the limitations contained therein were without consideration and of no effect, and the shipment was at common law which fixed the liabilities of the carrier.

2. ———: ———: **Delivery: Consignee's Aid.** And the common law carrier is an issuer and is required to deliver to the consignee, and must unload the goods before his liability ceases and the fact that consignee's men have aided in unloading will not release the carrier's liability; and the carrier's negligence is immaterial.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Elijah Robinson* and *Harris Robinson* for appellant.

(1) The court committed error in not permitting defendant to put in evidence the contract under which the horse was shipped. O'Bryan v. Kinney, 74 Mo. 125; Railroad v. Cleary, 77 Mo. 634; Rice v. Railroad, 63 Mo. 314; Kellerman v. Railway, 136 Mo. 177. (2) Delivery is completed by the acceptance by the owner or consignee of the goods before they are unloaded. If the owner or consignee voluntarily undertakes to unload goods, he becomes responsible for any loss or injury incurred during the work of unloading, even though he has the assistance of the carriers' servants. Lewis v. Western R. Corp., 11 Metc. (Mass.) 509; Sweet v. Barney, 23 N. Y. 337; Loveland v. Burke, 120 Mass. 139, 21 Am. Rep. 507; Whitney Mfg. Co. v. Railway, 38 S. C.

365, 37 Am. St. Rep. 767, 55 Am. and Eng. R. R. Cas., 611; Armstead Lbr. Co. v. Railway, 11 So. 365, 55 Am. and Eng. R. R. Cases, 600. There are no Missouri decisions in point.

*Conkling & Rea* and *Bruce Barnett* for respondent.

(1) The court committed no error in excluding from evidence the stock shipment contract offered by appellant railroad company. It recites its consideration, viz.: a special or reduced rate which is illegal and therefore no consideration at all. Being without a legal consideration, this contract is void upon its face, and therefore was properly excluded. R. S. 1899, sec. 1129; Ward v. Railway, 158 Mo. 234. (2) The fact that plaintiff's servant, George Anderson, assisted in unloading the horse does not relieve the railroad company from liability nor bring the case within the rule announced in the authorities cited in appellant's brief.

JOHNSON, J.—Plaintiff bought a horse valued at $250 at Marshall and had it shipped to him over defendant's railroad to Kansas City. The animal was injured while being taken from the car and this suit is for the recovery of the damages resulting to plaintiff from the injury.

The petition on which the cause was tried is in two counts. In the first, the cause of action stated is the failure of a common carrier to discharge its common law duty to transport the property received for shipment and to deliver it in good condition to the consignee at its destination. In the second count, the cause pleaded is the negligence of defendant in unloading the horse from the car at Kansas City. Defendant in its answer admits the existence of the relation of common carrier and shipper between itself and plaintiff with respect to the shipment, but denies that the animal was injured by the fault or negligence of defendant and interposes defenses based on the terms and conditions of the

written contract of affreightment executed by defendant and the consignor. A reply was filed putting in issue the allegations of new matter in the answer. The cause was tried before a jury. At the conclusion of the evidence, plaintiff, being required by the court to elect on which count of the petition he would stand, took a non-suit as to the second count and stood on the first. Verdict and judgment were for plaintiff on this count in the sum of $100, and the cause is here on the appeal of defendant.

Evidence introduced by plaintiff discloses the following facts. On learning that the horse had arrived at Kansas City, plaintiff sent a colored man who was expert in the handling and care of horses to receive and take charge of it. The man presented the bill of lading to defendant's agent and paid the freight charges with money furnished by plaintiff. Accompanied by an employee of defendant, he went to the car which was standing alongside an unloading platform of about the same height as the floor of the car. Defendant's employee procured a portable platform about five feet in width to bridge the space between the car door and the unloading platform. The portable platform was not equipped with side rails or guards and, according to the contention of plaintiff, was too narrow for use as a passageway for horses. Plaintiff's servant went into the car for the horse and was bringing him out when the animal becoming frightened, from some cause, jumped to one side, fell, and landed astride the portable platform. Before he could be extricated, he became lacerated and bruised on the legs and belly to an extent to render him useless for a long period. Plaintiff finally sold him for $260, but not until he had expended about $150 on account of his injuries.

Defendant offered in evidence the "Live Stock Contract" under the terms of which the shipment was made. This contract recited that the rate charged for the shipment was less than the rate charged for shipments at carrier's risk "for which reduced rate and other consid-

erations it is mutually agreed between the parties hereto as follows . . . Third, that said second party (the shipper) . . . shall load and unload the same at his own expense and risk." Other restrictions in the contract of defendant's common law liability are relied on by defendant, but that quoted is all that needs be mentioned. Defendant introduced evidence for the purpose of showing that the rate charged was a "reduced rate" in fact. The contract gives the value of the horse at $100 and contains a clause limiting the liability of defendant to that amount. In the rate sheet introduced by defendant, horses are classified as first-class freight and the rate on them from Marshall to Kansas City is fixed at thirty-seven cents per hundred pounds (the rate charged in the present case). This rate is based on a valuation of $100 per head. Where the declared value is higher, a higher rate is charged as per the following rule: "Where the declared value exceeds the above an addition of twenty-five per cent will be made to the rate per hundred pounds or car for each one-hundredth per cent, or fraction thereof additional declared value per head; animals exceeding in value eight hundred dollars per head, or when no value is given, will be taken only by special arrangement." No other rate is provided for horses the declared value of which does not exceed $100 per head.

On these facts the learned trial judge sustained plaintiff's objection to the introduction of the contract in evidence and refused to give any effect to its limitations of defendant's common law liability. We approve this ruling. The rate charged by defendant was the full tariff rate and in no sense a reduced rate. Plaintiff was not given the choice of shipping at a higher rate under a contract that would leave unimpaired defendant's common law liability, but was afforded only one rate and one form of contract, i. e., a contract that under the specious but untrue pretext of a "reduced rate" attempted to curtail defendant's liability. The fact that the tariff sheet provided a higher rate on horses of a

higher declared valuation than $100 per head is no ground for saying that the rate on horses of the latter valuation is a reduced rate. We discussed this subject fully in Ficklin v. Railroad, 117 Mo. App. 211, and refer to that case for a complete expression of our views. Since the rate paid by plaintiff was the full—not a reduced—rate, it follows that the restrictive provisions of the contract, being without consideration to support them are wholly inoperative. [George v. Railway, 113 S. W. 1099.]

We readily concede that in shipping contracts, the parties may make any contract they please as to the time, place and manner of delivery. [Loveland v. Burke, 120 Mass. 139.] But with the written contract out of the case, the duties and responsibilities of defendant were those imposed on common carriers by the rules of the common law. Under them, the duty of defendant required it not only to carry the horse safely to its destination, but also to unload it from the car for delivery to the consignee. Plaintiff was not compelled to receive the horse in the car and assume the risk of unloading and the mere fact that he sent his servant after the horse and the servant participated in the work of unloading did not shift the duty to unload from defendant to plaintiff. The responsibility of defendant as a carrier did not end until the horse was unloaded. "At common law, the obligation of a common carrier with respect to the subject of transportation is that of an insurer." [Creamery Co. v. Railroad, 128 Mo. App. 420.] Being an insurer, it is immaterial whether or not defendant was negligent in not providing suitable and reasonably safe appliances for the unloading. The cause of action is not grounded in negligence but in the default of an insurer.

What we have said disposes adversely to the position of defendant of all questions argued, including the objections urged against the instructions given at the re-

quest of plaintiff. We find the instructions to be free from error prejudicial to defendant. They impose on plaintiff burdens not within the proper scope of the issues, but of this defendant has no cause to complain.

The judgment is affirmed. All concur.