WALTER E. LEAS et al., Respondents, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, February 13, 1911.

CARRIERS OF LIVE STOCK: Limitation of Liability: Lack of Consideration. In an action for damages for the negligent injury by defendant railroad of a horse valued at $1000, the evidence of defendant showed that the rate charged was the usual, and in fact the only rate defendant had on horses valued at not to exceed $100 per head, and that it had but one form of contract for shipments at this rate, and under the pretext of the consideration of a reduced rate, attempted to release defendant from a part of its common-law liability. *Held*, that where the carrier has but one regular rate applicable to a given class of property, that it is not a reduced or special rate, and exemption from liability for negligence can not be predicated on such a rate. Hence, the trial court did not err in instructing the jury that there was no consideration to support the limitation of defendant's liability to $100 for injuries to the horse, and plaintiff can recover damages for the full amount of the injury.

Appeal from Sullivan Circuit Court.—*Hon. John P. Butler*, Judge.

AFFIRMED.

*James G. Trimble* and *Willard P. Hall* for appellant.

*R. E. Ash* and *John W. Bingham* for respondent.

JOHNSON, J.—Plaintiffs allege that a race horse owned by them and valued at one thousand dollars was injured by the negligence of defendant during the transportation of the animal from Hurdland to Green City over defendant's railroad and they pray for the recovery of the damages sustained by them in consequence of the injury. The answer, in addition to a general denial, pleads defenses based on the provisions of the shipping contract. A trial to a jury resulted in a verdict and

judgment for plaintiffs in the sum of five hundred dollars and the cause is here on the appeal of defendant.

The facts of the case are as follows: In the fall of 1908, plaintiffs raced their horse at various fairs in northeastern Missouri. The horse, a trotter, achieved a record of 2:25 at one of the races where he finished first and plaintiffs were taking him to Green City to enter him in the races at that place. Other horsemen were shipping their horses with plaintiffs and five horses were loaded in the same car and were shipped under one contract. One of the other horsemen attended to the shipping and signed the name of plaintiff Leas to the contract as shipper. The contract recited:

"That for and in consideration of (here insert rate) 7 per cwt., subject to minimum weights as shown in published tariffs, the said Railroad Company agrees to transport one car loaded with horses . . . from Hurdland to Green City, . . . upon the following terms: That, Whereas, the said first party, before delivering the said animals to said Railroad Company, demanded to be advised of the rate to be charged for the carriage of said animals, as aforesaid, and thereupon was offered by the said Railroad Company *alternative rates proportioned to the value of said animals,* and

Whereas, Such alternative rates are made in pursuance of the provisions relating thereto of the classification of freights adopted as regulations by the said Railroad Company, and fully set forth as follows, to-wit:

"Live Stock—Ratings given above are based upon declared valuations by shippers, not exceeding the following:

Each horse or pony (gelding, mare or
    stallion), mule or jack .......... $100 00
Each ox, bull or steer............... 50 00
Each cow ......................... 30 00
Each calf ......................... 10 00
Each hog .......................... 10 00
Each sheep or goat ................ 3 00

"When the declared value exceeds the above, an addition of 25 per cent will be made to the rate for each 100 per cent or fraction 'thereof, of additional declared valuation per head;' which said alternative rates are fully shown in and upon the regular tariffs and classifications printed, published and posted by the said company as required by law, and

Whereas, The first party, in order to avail himself of said alternative rates, and to secure the benefits theerof, has declared and does hereby declare said animals to be of the value as follows, to-wit:

Each horse, value $100.

Further, it was provided "that in case of loss or damage to said animals whether resulting from accident or negligence of said railroad company or its servants the said railroad company shall not be liable in excess of the actual loss or damage; and in no case shall the said railroad company be liable in any manner in excess of the agreed valuation upon each animal lost or damged."

The evidence of defendant shows that the rate charged in this instance was the usual and, in fact, the only rate defendant had on horses valued at not to exceed one hundred dollars per head and that it had but one form of contract for shipments at this rate and that was the form from which we have quoted and which, under the pretext of the consideration of a reduced rate, attempted to release defendant from a part of its common law liability. Defendant's general passenger and ticket agent testified, in part, as follows:

"Q. I believe you understood my question if you know of any other different rate charged for a car of the minimum of 21,800 lbs. from Hurdland to Green City, of a higher rate having been charged? A. No, sir, I do not. I don't know for the reason that nearly everybody takes advantage of the $100 valuation.

Q. Was that always accepted? A. We put it up

to the shipper. If he says $100 we haul him for that and if he says $200 we assess the freight.

Q. Do you mean to say that in your experience, Mr. Jacobs, you never knew of any other rate being charged? A. I don't believe a man ever put on the extra valuation. I don't remember of it.

Q. When a shipper asks for the rate you invariably give him that rate? A. We quote the rate on $100.

By a Juryman: Q. Was this shipped on this rate? A. Yes, sir.

Q. You say, Mr. Jacobs, in your experience as an agent you never knew of a shipper giving a greater valuation than $100, that they always preferred to ship at the lower rate? A. I don't know of a single instance where they valued it over $100.

Q. Suppose they had declined to ship at a valuation of $100 and said the horse was worth more than $100, what would you have done? A. We would charge extra rate charges accordingly."

The agent at Hurdland testified:

"Q. Do you remember of this shipment? A. Yes, sir.

Q. You never called their attention to any other different schedule or rate than the one you provided for them at that time? . . . A. No, sir; I did not.

Q. It wasn't your custom to, is it? A. I believe the custom is if a man has a higher valuation on stuff he would say so.

Q. You just present him the contract and the rate, don't you? A. Yes, sir.

Q. Did you have any other kind of a contract there for them to sign? A. No, sir. We use the same form of contract only different valuations."

Counsel for defendant contend that the court erred in instructing the jury that there was no consideration to support the limitation of defendant's liability to $100 for injuries to the horse and argue: "In this connection we maintain that the written contract of shipment and

the evidence clearly proved that defendant had in force schedules of rates in the manner required by law; that said schedules fixed a graduated scale of rates for live stock depending upon the value of the animal shipped, the lowest being one hundred dollars, upon which the lowest rate was charged, the rates being increased in a specified per cent as the valuation of the animal increased. And we further maintain that said schedules of rates were legal and binding between the company and any shipper who contracted in accordance therewith; that the contract in suit was thus made, and that, under said contract, said limitation of defendant's liability was binding upon plaintiffs, and the court should have so instructed the jury."

This being an intra-state shipment there is no need to look beyond the decisions of our own Supreme Court and Courts of Appeals in solving defendant's proposition. It must be kept in mind that this is an action for negligence—for damages resulting to the shipper from a positive wrong committed against his property by the carrier to which he had entrusted it for transportation. The rule is fundamental that a common carrier "cannot by any kind of agreement exempt itself from losses accruing by reason of its own negligence." [Kellerman v. Railway, 136 Mo. l. c. 190.]

It was held in the case just cited and in other cases to which reference is made therein, that a common carrier by contract fairly entered into, for a valuable consideration, may "limit the amount of damages to be paid by it in consequence of any loss which the owners might sustain by reason of loss or injury to the animal by the carrier's negligence," but the court recognized and approved the doctrine stated in McFadden v. Railroad, 92 Mo. 343, that "a stipulation in a written contract of shipment, placing a limited valuation on the property shipped in case of its loss by the default of the carrier, when not made in consideration of *special or reduced rates of shipment,* is not binding on the shipper."

That doctrine has not been assailed by any decision in this state to which our attention has been called. It was attacked by counsel for the Railroad Company in George v. Railroad, 214 Mo. 551, but, speaking through VALLIANT, J., the court say:

"We understand the proposition of the counsel now to be that no consideration is necessary to support such a contract; in other words, the railroad company may charge the full tariff rate and yet limit its common low liability in the manner now claimed. If there is a decision in this state going to that extent the learned counsel have not brought it to our attention."

In Ward v. Railroad, 158 Mo. 226, where the carrier sought to enforce a limited valuation clause in the shipping contract, it is said:

"There was really no substantial testimony upon the issue tendered by defendant that the tariff rate given plaintiff was less than the regular or schedule rate, and for that reason, the court might properly have given plaintiff's instruction numbered 3. There was no consideration for the 'reduced valuation' clause in the contract of shipment and, to that extent, it was void and inoperative, and should not have been considered by the jury."

In Mires v. Railroad, 134 Mo. App. l. c. 385, the St. Louis Court of Appeals held that "a contract supported by a sufficient consideration will be sustained. It is said to be entirely proper for the carrier and shipper to agree upon such a valuation and adjust the amount for which the carrier should respond with reference to the rate charged for carriage."

To the same effect are the recent decisions of this court in Ficklin v. Railroad, 117 Mo. App. 221; Creel v. Railroad, 137 Mo. App. 27, and VanBuskirk v. Railroad, 143 Mo. App. 707.

The cases to which we have referred unite in regarding a limited valuation clause in a shipping contract as a restriction on the carrier's common law liability and

in holding, that to be valid, the stipulation must be supported by the consideration of a reduced rate. The carrier is not permitted to charge the regular tariff rate for the transportation of property of a given class and then by contract supported by no other consideration than its undertaking to convey the property, exempt itself from a part of its legal duties towards the shipper.

What is a reduced rate that will serve as the consideration for an "owner's risk" contract? Certainly where the carrier has but one regular rate applicable to a given class of property that is not a reduced or special rate and exemption from liability for negligence cannot be predicated on such rate. See the opinions in the George, Ward and Kellerman cases, supra.

It would be a logical absurdity to speak of a rate on a given class of property as a reduced rate when there is but one rate for such class. The adjective "reduced" implies a comparison, and if there is but one rate with what may it be compared? It is not permissible to go outside of the subject-matter to seek a comparison. The rate on coal may be less than on dry goods, but that fact would not make it a reduced rate. Necessarily the comparison must be made, if at all, with another higher rate on the same class of property and if there is no such rate there can be no reduced rate. In the case in hand, as in the Kellerman and George cases, there was but one rate on horses valued at $100—the regular tariff rate—and the contracts of shipment attempted to differentiate that rate into a reduced rate by comparing it with the higher rates charged for horses of higher value. Such comparison manifestly is improper. For purposes of revenue, defendant has separated horses into different classes, and it would be just as reasonable and logical to compare the rates on coal and dry goods; on rough stone and cut stone, or on pig iron and castings, as to compare the rate on a horse valued at one hundred dollars with the higher rate on a horse valued at two hundred dollars. The written contract shows on its

face that the rate in question was the regular and not a reduced rate. As in the George case, it was the only rate and we must hold, as did the Supreme Court in that case, that it will not serve as a consideration for the limited valuation clause.

In answer to the argument that it is unjust to the carrier that a shipper should secure a limited valuation rate and receive the same benefits he would have had had he paid the higher rate, we refer to what is said by the Supreme Court on this subject in McFadden v. Railway, supra:

"On the one hand it may be, as is there said, unjust, unreasonable, and repugnant to sound priciples of fair dealing, for the shipper to reap the benefits of a contract, by which he secures a lower rate than the carrier might reasonably charge for the service rendered, if there be no loss, and to repudiate it in case of loss. Where the shipper procures the lawful rates of the carrier to be reduced in express consideration of the agreed value, upon which the compensation is based, he is, under numerous authorities, some of which are cited, held to be estopped to say the value is greater when the loss occurs. On the other hand, it would, we think, be no less unfair, unreasonable, and unjust that the carrier, without any sacrifice of his interest, or lawful demands, or diminution of his lawful charge, should secure, without any consideration therefor, such important advantages and release of liabilities to which he would otherwise be subjected under the law."

We are not dealing with a case where the shipper was guilty of a false representation respecting the value of the horse or of a fraudulent concealment of its value, and we express no opinion about a case of that kind. The shippers of the race horses made no statements to the agent respecting their value and defendant's agent made no inquiries. They brought their horses to the agent and offered them for shipment. They said nothing about different rates, neither did he. He must

have known the horses were race horses and very valuable, yet he voluntarily made out the shipping contract on the ordinary form used by all shippers of horses and they accepted it without question. Such facts do not tend to accuse plaintiffs of attempting to overreach defendant. The transaction was conducted in the customary way and there is no reason in morals or in law why defendant should not bear the full consequence of its negligent injury of the horse.

Two other instructions are attacked by defendant but we find them free from prejudicial error. The judgment is affirmed.

All concur, *Ellison, J.,* in result.