J. W. HULL, Respondent, v. CHICAGO, BURLING-
    TON & QUINCY RAILROAD COMPANY, a Cor-
poration, Appellant.

**Kansas City Court of Appeals, December 2, 1918.**

1. **CARRIER OF LIVE STOCK: Public Service Commission: Reduced
   Rates.** The well established rule in this State that a carrier may
   not limit its common-law liability unless the contract is supported
   by the consideration of a reduced rate or other consideration, has
   not been changed or abrogated by the provisions of the Public
   Service Commission Act requiring carriers to file schedules of
   tariffs with such commission.

2. ————: **Limitation of Liability: Consideration.** Where a carrier
   has but one regular rate applicable to a given class of property
   and that rate is not a reduced or special one, it cannot escape
   liability for negligence by reason of such a rate.

Appeal from Worth Circuit Court,—*Hon. John W.
                Dawson,* Judge.

AFFIRMED.

*H. J. Nelson, J. A. Lydick* and *Kelso & Kelso* for
appellant.

*DuBois & Miller* for respondent.

BLAND, J.—Plaintiff shipped one hundred and
twenty-one head of sheep from Grant City, Mo., to St.
Joseph, Mo., over defendant's railroad. While in trans-
it two of the sheep so shipped were killed by reason
of the negligence of the defendant. Plaintiff brought
this action for eighteen ($18.) dollars, the actual value
of the sheep so killed and recovered that amount in the
lower court, and defendant has appealed.

The contract of shipment provides as follows:

"That for and in consideration of 12.4c per cwt.,
subject to minimum weights as shown in its published

tariffs, classifications and rules, the carrier agrees to transport one car loaded with sheep (numbers ot way-bills, initials and numbers of cars and number of animals, as noted in the left hand margin hereof) from Grant City, Mo., to St. Joseph, Mo., consigned to Davis & Son; and the shipper, in consideration thereof, agrees to deliver the said animals to the carrier for transportation between the points aforesaid, upon the following terms, viz:

1. Whereas, the rates and charges for which said animals may be lawfully carried are fixed and determined by the duly established and published tariffs, classifications and rules of said carrier, to which reference is hereby made, in accordance with which the said carrier has alternative and graduated rates for the carriage of live stock proportioned to the value thereof as declared by the shipper or his agent;

Now, therefore, for the purpose of enabling the carrier to apply the lawful rate as provided in its tariffs, the shipper hereby declares said animals to be of the value, as follows, towit:

Each sheep    ·    Value $5:00

Defendant had filed with the Public Service Commission of this State a schedule showing the rates, fares and charges for the transportation of live stock, the material parts of which are as follows:

"Ratings on live stock vary according to the valuations stated by shipper, and as carriers have no means of determining values of Live Stock when tendered for transportation, shippers will be required to declare in writing the valuation at time and place of shipment. Where shippers refuse to declare value and execute Live Stock contracts, live stock will not be accepted for transportation.

Minimum ratings given below are based upon values declared by shippers, not exceeding the following under contract:

Each Horse, or Pony (gelding, mare or stallion)
Mule, Jack or Jenny ..................$150.00
Each Colt, under one year .............75.00

Each Ox, Bull or Steer ...............75.00
Each Cow, or Burro ...................50.00
Each Calf ............................. 20.00
Each Hog ............................. 15.00
Each Sheep, or Goat ................. 5.00

Live Stock exceeding values shown above:

Where the valuation declared by shippers exceeds the values shown above an addition of two (2) per cent will be made to the rate per 100lb., or car, for each 50 per cent, or fraction thereof, of additional declared value per head."

The agreed statement of facts recites that it is agreed between the parties that the legal rate for sheep of the declared value of $5 per head, shipped from Grant City, Mo., to St. Joseph, Mo., was 12.4c per cwt.

It is defendant's contention that the judgment for plaintiff should not have been for a greater amount than that declared in the contract of shipment as the value of the lost sheep, to-wit, $10. This court recently had before it a contract substantially the same as the one involved in this case and decided, applying the well and long established rule in this State that a carrier may not limit its common-law liability unless the contract is supported by the consideration of a reduced rate or other consideration and is clearly reasonable, that the carrier was liable for the actual loss occasioned by the injury to the animals.    [Leas v. Railroad, 157 Mo. App. 455.]   As there is nothing in the evidence in this case to show that the shipper was guilty of false representations as to the value of the sheep or of a fraudulent concealment of the value, we are constrained to follow the case of Leas v. Railroad, supra, and hold that plaintiff was entitled to recover the full value of his sheep unless the fact that defendant filed its schedule with the Public Service Commission showing rates, fares and charges for transportation of live stock, changes the rule mentioned supra, as is earnestly urged by the defendant.

Can it be said that the mere filing of such schedule with the Public Service Commission renders valid stipulations in shipping contracts, drawn in pursuance thereof, when such stipulations have long been held void by the courts of this State because they were not founded upon any consideration such as reduced rate? Does the filing of such a schedule render valid a stipulation in the shipping contract that would otherwise be void for want of a consideration.

The schedule, rates and charges mentioned above were filed with the Public Service Commission. Such filing established them as lawful rates and the shipper as well as the carrier was bound to take notice of them so long as they remained operative. This is as far as the Public Service Commission law goes in reference to this matter. The object and purpose of the Public Service Commission (Laws of 1913, page 556) was to better shipping conditions in this State and was not intended to allow the carrier to limit their liability for wrongs committed by them.

The Act does not contemplate that the Commission should determine what liability should arise under shipping contracts drawn in pursuance of the filing of such schedules, and the filing of the same by defendant did nothing more than establish the rates therein as lawful. The legal effect of the schedule so filed, and the liabilities incurred thereunder, are still matters for the courts to determine. There is no controversy in reference to the lawfulness of the rates contained in the schedule filed. The question to be determined is the liability incurred by defendant by reason of its negligence in failing to carry out the terms of the contract based upon the schedule so filed. In fact the contract does not mention the question of liability unless it may be said to do so by inference. The Public Service Commission Act does not expressly or by fair implication say that the filing of such a schedule could be made to act as changing the long settled policy of the law of this State that a carrier may not, except by special or express contract, fairly and under-

standingly made, limit his common-law ability and the shipper release the carrier of its obligation as the insurer of his property. Unless the Act clearly indicates that the Legislature intended that the filing of such schedule could so affect such rule of liability in this State, it should not be so construed. [Thomas v. Maloney, 142 Mo. App. 193.]

This is not a suit involving the recovery by the carrier of the difference between the lawful rate for carrying sheep of the value of $9 per head and that of those at $5 per head. If the suit involved such a matter as this then defendant could invoke the Public Service Commission Act to establish its right to recover the difference between the amount of money it actually received from plaintiff and that it should have received, but the law was not designed in any way to affect the liability of the company arising by reason of negligence on its part. So far as this evidence shows, defendant has on file with the Public Service Commission only one regular rate applicable to the transportation of sheep of the value of $5 per head. That the contract does not provide a reduced rate by comparing the one regular rate with the higher rate charged for sheep of higher value, was decided in Leas v. Railroad, supra., l. c. 461.

As we see it, this case presents a situation where the carrier has but one rate on sheep filed with the Public Service Commission for the carriage of sheep such as those involved in this case. Until the carrier files with the Commission a reduced rate and otherwise complies with the Public Service Commission law in reference to the establishment of schedules of rates, it is not in a position to say that it has a reduced rate for the carriage of live stock, much less may it say that the contract herein provides that the animals were shipped under such a rate.

It follows from what we have said that the judgment was right and it is, therefore, affirmed. All concur.

ON MOTION FOR A REHEARING.

Defendant in its motion for a rehearing says:

"It is true, appellant has under the tariffs on file only one rate for $5 sheep but it has another rate for $9 sheep. It is not possible to make two rates on one class and the suggestion of the court that appellant file with the Public Service Commission, a tariff showing two rates on $5 sheep, is suggesting an impossibility as well as a criminal act."

We made no such suggestion in the opinion in this case nor did we intend to pass upon the question as to whether it is possible under the law for defendant to file with the Commission two rates on sheep of the value of $5. That question was not before us for decision. Of course, if it is unlawful for defendant to file with the Commission a reduced rate, then there is no way under the laws of Missouri for defendant to limit its common-law liability for the full actual loss sustained by the shipper, except by a special or an express contract, fairly and understandingly made, supported by a consideration of other than a reduced rate.

The motion for a rehearing is overruled.